## IN the MATTER OF E.H., a Juvenile, Appellant.

### No. 08–15–00070–CV

Court of Appeals of Texas, El Paso.

January 18, 2017

■■■■■■■■■■■■■■

———

■■■■■■■■■■■■■■

Cody L. Cofer, Cofer Law, P.C., Fort Worth, TX, for Appellant.

Debra A. Windsor, Chief Assistant District Attorney, Fort Worth, TX, for Appellee.

Before McClure, C.J., Rodriguez, and Hughes, JJ.

## OPINION

ANN CRAWFORD McCLURE, Chief Justice

Appellant E.H. was charged with engaging in delinquent conduct by three acts of aggravated sexual assault of a child younger than 14 years of age, and two acts of indecency by sexual contact with a child younger than 17 years of age. The jury found that E.H. had engaged in two of the three acts of aggravated sexual assault and both acts of indecency with a child by sexual contact. The trial court sentenced E.H. to five years confinement, probated for two years. E.H. raises two related issues on appeal: (1) whether the trial court erred in excluding evidence that the uncle of the child victim had been convicted of a sexual assault, which E.H. believed would have established an alternative basis for the child victim's sexual knowledge; and (2) whether the trial court denied E.H. his constitutional right to confront witnesses by not allowing his attorney to cross-examine the child victim regarding that matter. We conclude there was no error and affirm.[1]

## BACKGROUND

The child victim, A.S., testified that E.H., her older half-brother, had sexually assaulted her on multiple occasions beginning when she was eight years old until she turned eleven in 2013. A.S. testified that on several occasions during this three-year period, E.H. touched her vaginal area with his penis, hands, and mouth, penetrated her anus with his penis, and forced her to touch his penis with her hands and mouth. According to A.S., during some of these encounters, E.H. would become angry if she resisted, and would yell at her, push her down, shove her, and hit her on her arms and legs. She reported that E.H. also threatened that he would hurt her if she did not cooperate with him. A.S. also testified that E.H. would also on occasion show her pictures of naked individuals in magazines.

According to A.S., E.H. assaulted her approximately five times a month while they were living in their divorced mother's home when their mother was at work or out shopping. A.S. initially informed her mother about E.H.'s conduct on an undisclosed date, but her mother did not believe her. Because of her mother's disbelief, A.S. attempted to record one of the incidents with her "Nintendo DS," but when E.H. realized what she was doing, he forced her to delete the recording and threw the Nintendo to the ground. This attempt occurred in April or May 2013, and appears to have been E.H.'s last attempt to assault A.S.

A.S. eventually made an outcry to her father's live-in fiancée (the "stepmother") in November 2013, informing her that E.H. had been sexually abusing her for the past three years. A.S. told her stepmother

---

**1.** This appeal was transferred from the Fort Worth Court of Appeals, and we apply the precedent of that Court to the extent required by Tex. R. App. P. 41.3.

that E.H. had touched her "private parts" on several occasions and had put his penis in her vagina. The stepmother recalled that A.S. was crying and shaking when she made the outcry and appeared to be extremely upset.

The stepmother contacted Child Protective Services (CPS), and A.S. underwent a sexual assault examination in December 2013 by a Sexual Assault Nurse Examiner. During her examination, A.S. informed the SANE nurse that E.H. had engaged in multiple acts in which he touched her "private parts, front and back, under and over the clothes," beginning when she was eight years old and continuing until she was eleven years old. A.S. also reported that E.H. had penetrated her vagina and anus with his penis and had forced her to fondle his penis with her hands, and that all of these incidents occurred at her home where she lived with her mother and E.H. A.H. also informed the nurse that E.H. had threatened to hurt her if she told anyone what had happened. The nurse did not find any physical signs of trauma during the examination, but explained this was still consistent with a finding that A.S. had been sexually assaulted in light of the delay in making her outcry.

A.S.'s mother denied that A.S. had ever informed her of any of the alleged assaults prior to the outcry to her stepmother. However, A.S.'s mother did acknowledge seeing bruises on A.S.'s arms and legs, but claimed that A.S. never told her that E.H. had caused the bruising. She also acknowledged that she had regularly left E.H. and A.S. alone together for one or two hours after they came home from school while she was still at work.

In an attempt to impeach A.S., defense counsel elicited testimony from A.S. and her mother indicating that A.S. had been in trouble for "lying" in the past. Defense counsel also elicited testimony from both A.S. and her mother that A.S. had been allowed to watch movies with sexual scenes while at her father's house, in order to explain how A.S., at such a young age, could have obtained knowledge of the sexual acts she had described when recounting E.H.'s assaults on her.[2]

### Excluded Evidence of the Uncle's Conviction

E.H.'s attorney sought to introduce evidence that A.S.'s paternal uncle had been convicted of sexual assault in February 2014, shortly after A.S. made her outcry to her stepmother. In particular, defense counsel sought to introduce a certified copy of the uncle's judgment of conviction, arguing that it was relevant to demonstrate that A.S. had obtained her precocious sexual knowledge from another source and that the evidence was part of his defensive theory that A.S. was untruthful in claiming that E.H. had sexually assaulted her. Defense counsel explained that the uncle's conviction provided a possible other explanation for how A.S. may have learned the terms she had used when describing her alleged sexual encounters with E.H. and for how she obtained her knowledge of sexual matters that a child of her age would not normally have.

In an attempt to establish its relevancy, E.H.'s attorney was permitted to question

---

**2.** A.S.'s mother testified that A.S.'s father "liked to watch porn quite a bit," and that he did so when the children were at his home, and that she believed A.S. had watched pornography at her father's house and had witnessed graphic sexual acts, which included oral, vaginal, and anal penetration. According to the mother, A.S. had asked her about these specific sexual acts and had claimed that she had walked in while her father was watching pornography. According to the mother, she contacted the police to report her ex-husband's conduct, but the police did not follow up on her report.

A.S. and her mother outside the presence of the jury to determine what A.S. knew about the uncle's conviction. A.S.'s mother testified that she believed A.S. knew about her uncle's conviction, asserting that before the uncle went to prison, A.S. informed her that she was not permitted to be "around him because he was mean and sexual towards women[.]" She further recalled that A.S. referred to the uncle as being "creepy" and a "pervert." A.S. testified that she knew "there [were] some bad things going on" with her uncle, and that she had been told she "couldn't talk to him." However, she testified she did not know why she was forbidden to speak with her uncle and denied ever telling her mother that her uncle was "creepy" or a "pervert." Although A.S. acknowledged being aware that her uncle had been sent to prison, she denied knowing the reasons why. After hearing this testimony, the trial court denied E.H.'s request to admit evidence of the uncle's conviction.

## DISCUSSION

### Exclusion of the Evidence

In his first issue, E.H. contends the trial court erred in excluding evidence of the uncle's sexual assault conviction, claiming that the evidence was relevant to support his theory that A.S. had been lying at trial, and that this evidence provided an alternative explanation for how A.S. obtained her precocious knowledge of sexual matters. We conclude the trial court did not abuse its discretion in excluding the evidence of the conviction.

### *Standard of Review*

We review a trial judge's decision to admit or exclude evidence under an abuse of discretion standard. *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex.Crim. App. 2016). A trial judge abuses his discretion when his decision falls outside the

zone of reasonable disagreement. *Id.* at 83. Before we may reverse the trial court's decision, we "must find the trial court's ruling was so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Id.* (quoting *Taylor v. State*, 268 S.W.3d 571, 579 (Tex.Crim.App. 2008)).

Finding a piece of evidence to be relevant is the first step in a trial court's determination whether the evidence should be admitted before the jury. *Henley*, 493 S.W.3d at 83. Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *Id.*; TEX. R. EVID. 401. The proponent of evidence has the burden to demonstrate its relevance. *Garza v. State*, 18 S.W.3d 813, 822 (Tex.App.–Fort Worth 2000, pet. ref'd) (*citing Holt v. State*, 912 S.W.2d 294, 301 (Tex.App.–San Antonio 1995, pet. ref'd)).

### *Analysis*

In arguing the trial court abused its discretion in excluding evidence of the uncle's conviction, E.H. relies primarily on *Hale v. State*, 140 S.W.3d 381 (Tex.App.–Fort Worth 2004, pet. ref'd). E.H. correctly points out that in *Hale*, the Fort Worth Court of Appeals recognized that the "Constitution compels the admission of evidence to show an alternative basis for a child victim's knowledge of sexual matters." *Id.* at 396; *see also Matz v. State*, 989 S.W.2d 419, 422–23 (Tex.App.–Fort Worth 1999), *rev'd on other grounds*, 14 S.W.3d 746 (Tex.Crim.App. 2000) (making a similar recognition). However, the court in *Hale* also recognized that the Constitution requires the introduction of such evidence only if it is first shown to be rele-

vant and admissible. *Hale*, 140 S.W.3d at 396; *see also Matz*, 989 S.W.2d at 422.

In *Hale*, the adult defendant was accused of sexually assaulting a male child victim, and sought to introduce evidence that the victim had engaged in sexual relations with his stepbrother, as an alternative source of sexual knowledge. 140 S.W.3d at 385–86, 396. The court held that before admitting evidence that a child victim had been assaulted by another individual in order to explain his or her sexual knowledge, the defendant was required to "establish that the prior acts clearly occurred and that the acts so closely resembled those of the present case that they could explain the victim's knowledge about the sexual matters in question." *Id.* at 396. The court concluded that the defendant had failed to establish the relevancy of the evidence under this standard. *Id.* at 397. Likewise, E.H. failed to establish the relevancy of his proposed evidence.

E.H. argues that he should have been permitted to present evidence to the jury regarding the uncle's sexual assault conviction because the offense "clearly occurred" as evidenced by the judgment of conviction and because the conviction occurred near the time of A.S.'s outcry. In particular, E.H. contends that the initial sexual abuse allegations by A.S. were made "amidst the familial struggle to deal with the Uncle's rape case," pointing out that the uncle's offense occurred in September 2013, approximately two months before A.S. made her outcry. E.H. asserts that the uncle's "situation" may have exposed A.S. to sexual matters, which in turn could have provided an alternative explanation for how she became aware of the sexual acts that she described in her trial testimony. He concludes that the trial court's exclusion of this evidence thereby deprived him of his right to present a valid defense in his case.

While the uncle's offense did occur near the time A.S.'s outcry occurred, E.H. failed to elicit any testimony from either A.S. or her mother that supported his theory that A.S. obtained any sexual knowledge from her uncle's situation. To the contrary, their testimony demonstrated at most that A.S. was only vaguely aware of her uncle's conviction. While A.S. testified that while she knew that her Uncle had done some "bad things" and had been sent to "jail," she expressly denied having any knowledge of what he had done. Further, A.S.'s mother testified only that she believed A.S. "knew what he went to prison for," but provided no detail regarding what she believed A.S. actually knew with respect to the uncle's conduct. E.H. also failed to present any evidence to establish the exact nature of the uncle's offense or that the uncle's offense was similar to the sexual acts for which E.H. was accused. Accordingly, we conclude that E.H. failed to meet his burden to establish that the uncle's conviction was relevant to whether A.S. had obtained her precocious sexual knowledge from an alternative source. *See Hale*, 140 S.W.3d at 396; *see. also Bryan v. State*, No. 02–08–00379–CR, 2010 WL 1137038, at *3 (Tex. App.–Fort Worth Mar. 25, 2010, pet. ref'd) (mem. op., not designated for publication) (citing *Hale* and concluding that evidence of the child victim's prior sexual experience was inadmissible because the defendant failed to establish that the prior assault was sufficiently similar to facts underlying the defendant's assault); *Matz*, 989 S.W.2d at 422–23 (holding that defendant accused of sexual assault did not establish the admissibility of evidence that the child-victim had been sexually assaulted by another individual, where the alleged sexual assaults were dissimilar in nature and therefore could not have provided an alternative source of the victim's

knowledge of the particular sexual acts in question).

We also disagree with E.H.'s contention that the exclusion of this evidence deprived him of the opportunity to present his defense to the jury that A.S. may have obtained her sexual knowledge from an alternative source and was therefore lying about her encounters with E.H. E.H.'s attorney, however, was permitted to extensively examine both A.S. and her mother before the jury regarding other alternative—and more likely—sources of A.S.'s knowledge of sexual matters, such as viewing pornography and inappropriate movies at her father's home. Accordingly, E.H. was not prevented from establishing his defense that A.S. obtained her knowledge of sexual matters from alternative sources—just not this particular source.

We therefore conclude the trial court did not abuse its discretion in excluding the evidence of the uncle's sexual assault conviction. *See, e.g., Bryan,* 2010 WL 1137038, at *3–4 (although trial court excluded evidence that a child victim of sexual assault had been previously assaulted, the defendant was allowed to develop his alternative-source-of-knowledge defensive theory when he cross-examined the victim about seeing a pornographic video and walking in on her mother performing oral sex). E.H.'s first issue is overruled.

## Confrontation Clause

In a related argument, E.H. argues in his second issue that the trial court violated his constitutional right to confront witnesses by refusing to allow his attorney to question A.S. in the jury's presence whether she obtained her sexual knowledge from her uncle's conviction and concerning the alleged inconsistencies between the voir dire testimony given by A.S. and her mother with regard to A.S.'s knowledge of the conviction. We agree with the State

that E.H. did not preserve this issue for appellate review.

### *Preservation of Error*

The Sixth Amendment gives a defendant the right to be confronted with the witnesses against him. *Robinson v. State,* 310 S.W.3d 574, 577 (Tex.App.–Fort Worth 2010, no pet.) (citing *Crawford v. Washington,* 541 U.S. 36, 42, 124 S.Ct. 1354, 1359, 158 L.Ed.2d 177 (2004)). The right to confront witnesses includes the qualified right to cross-examine those witnesses. *Id.* (citing *Davis v. Alaska,* 415 U.S. 308, 315–16, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974), and *Hammer v. State,* 296 S.W.3d 555, 561 (Tex.Crim.App. 2009)). However, to preserve a complaint for review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if those grounds are not apparent from the context of the request, objection, or motion. *Id.* (citing Tex. R. App. P. 33.1(a)(1)); *Mosley v. State,* 983 S.W.2d 249, 265 (Tex.Crim.App. 1998) (op. on reh'g). And, the arguments on appeal must comport with the objections made at trial. *Reyna v. State,* 168 S.W.3d 173, 177 (Tex.Crim.App. 2005). Confrontation Clause complaints are subject to these same preservation requirements. *Id.* at 179–80; *see also Davis v. State,* 313 S.W.3d 317, 347 (Tex.Crim.App. 2010) (holding that Confrontation Clause claims are subject to preservation requirement); *Paredes v. State,* 129 S.W.3d 530, 535–36 (Tex.Crim.App. 2004) (holding that Confrontation Clause complaint required contemporaneous objection). Accordingly, a Confrontation Clause complaint is waived on appeal if a defendant fails to object on that specific basis at trial. *Reyna,* 168 S.W.3d at 179–80; *Paredes,* 129 S.W.3d at 535.

### Analysis

 After questioning A.S. and her mother on voir dire regarding A.S.'s knowledge of her uncle's conviction, defense counsel pointed out that there were inconsistencies between the two witnesses whether A.S actually knew the nature of her uncle's conviction and whether A.S. had told her mother that her uncle was creepy or a pervert.[3] Defense counsel requested that he be permitted to call A.S. back to the stand to question her not only about whether she may have obtained her sexual knowledge from her uncle's situation, but also to impeach her credibility by pointing out the inconsistencies between her and her mother's testimony. Defense counsel, however, never objected that E.H.'s right to confrontation would be violated if the trial court denied him the right to recall A.S. to the stand and made no reference to the Confrontation Clause when making his objections to the trial court.

 When a defendant only seeks to have evidence admitted for the purpose of impeaching a witness's credibility, without specifying whether he was "relying on the Rules of Evidence or the Confrontation Clause" in making his request, the defendant's request fails to "put the trial judge on notice that he was making a Confrontation Clause argument." *Reyna*, 168 S.W.3d at 179 (citing *Clark v. State*, 881 S.W.2d 682, 694 (Tex.Crim.App. 1994)). Because the trial judge does not have the opportunity to rule upon Confrontation Clause rationale, the issue is not preserved for appeal. *Id.*; *see also Paredes*, 129 S.W.3d at 535 (overruling appellant's Confrontation Clause issues on appeal because he did not preserve error related to the Confrontation Clause at trial); *see also Clay v. State*, 361 S.W.3d 762, 767, n.7 (Tex.App.–Fort

Worth 2012, no pet.) (appellant forfeited any Confrontation Clause complaint on appeal when he did not argue in the trial court that his right to confrontation under the Sixth Amendment had been violated by admission of evidence). Similarly, E.H. did not make any Confrontation Clause objection to the trial court. We therefore hold that E.H. has waived his right to make a Confrontation Clause complaint on appeal. We overrule E.H.'s second issue.

### CONCLUSION
The trial court's judgment is affirmed.

Hughes, J., not participating

---

**3.** Defense counsel used the term "icky" when he made this argument to the trial court.