

# NUMBER 13-22-00158-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

JOSE LOPEZ JR.,                                                                    Appellant,

v.

THE STATE OF TEXAS,                                                                Appellee.

## On appeal from the 272nd District Court
## of Brazos County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Tijerina
Memorandum Opinion by Justice Longoria**

Appellant Jose Lopez, was found guilty by a jury for the offense of aggravated assault with a deadly weapon, a first degree felony. *See* TEX. PENAL CODE ANN. § 22.02(a)(2), (b)(1). The jury sentenced Lopez to twelve years' imprisonment in the Correctional Institutions Division of the Texas Department of Criminal Justice. By two issues, Lopez claims the trial court abused its discretion when it limited his cross-

examination of a witness during the punishment phase of his trial. We affirm.[1]

## I.    FACTUAL BACKGROUND

On the evening of June 23, 2017, Lopez brutally assaulted his wife, Monica Lopez,[2] at their home in Bryan, Texas. Monica's son and Lopez's stepson, John Pineda, also lived in the home and was getting ready to go to sleep when he heard Monica frantically yelling "Ow, ow!" Pineda immediately left his room and saw Monica crouched down in a fetal position in a corner of the living room. Pineda observed Lopez, his stepfather, strike Monica "all over" with closed fists while Monica used her hands to protect her face. Pineda grabbed Lopez to get him off of Monica, but Lopez pushed Pineda away and continued punching Monica, who was on the floor. Pineda also witnessed Lopez stomp Monica's head with his feet while she remained defenseless on the ground. Pineda grabbed Lopez a second time, and Lopez finally stopped his assault and left the home. Pineda called for an ambulance.

During the 911 call, Monica told the operator that Lopez had stomped on her face and hands. When asked by the 911 operator "Why did this happen?" and "How did this start?" Monica replied "[b]ecause I told him I was leaving him." Due to the severity of her injuries, first responders could not treat Monica at the scene and transported her to the hospital. During her examination at the hospital, a CAT scan revealed that Monica previously had surgery to treat a brain aneurysm. As a result of Lopez's assault, Monica suffered a broken nose, a contusion to the eye that was nearly swollen shut, and a

---

[1] This case is before this Court on transfer from the Tenth Court of Appeals in Waco pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001.

[2] We refer to the victim by her first name to avoid confusion.

2

contusion on her left hand.

## II.    THE TRIAL

Lopez was indicted for aggravated assault with a deadly weapon, a first-degree felony (Count One), and assault involving family violence with a previous conviction of assault involving family violence, a third-degree felony (Count Two). *See* TEX. PENAL CODE §§ 22.01(a)(1), (b)(2)(A), 22.02(a)(2), (b)(1).

### A.    Guilty Phase

On March 8, 2022, prior to jury selection, the State informed the trial court that it intended to abandon the word "serious" in Count One of the indictment, which alleged in relevant-part that Lopez ". . .intentionally, knowingly, and recklessly cause[d] *serious* bodily injury to Monica Lopez" (emphasis added). The State informed the trial court that it was retaining the word "serious" as it appeared in Count One's language regarding the definition of a deadly weapon. The State also informed the trial court that it was going to proceed only on Count One, and abandon Count Two. Lopez affirmatively waived any objections, and the trial court granted the State's request. As a result, Count One stated in relevant-part that Lopez ". . .intentionally, knowingly, and recklessly cause[d] bodily injury to Monica Lopez," the word "serious" having been removed. Thereafter, the jury was sworn in, Lopez was arraigned by the trial court, and he pleaded "not guilty."

After the State presented its first witness, Lopez informed the trial court of his intent to change his plea on Count One from "not guilty" to "guilty." After several plea documents were executed by the parties and the trial court, Lopez freely and voluntarily pleaded "guilty" to Count One of the indictment in the presence of the jury, which was accepted

3

by the trial court. The trial court explained to the jury that it was going to instruct them in the jury charge to find Lopez guilty based on his guilty plea and then to determine an appropriate punishment after hearing all the evidence.

## B.    Punishment Phase

At the punishment phase, Pineda testified as to the circumstances of the June 23, 2017 assault. According to Pineda, Monica and Lopez had been in a relationship for years prior to getting married and would argue about money and infidelity. On cross-examination, Pineda admitted that he knew of Alejandro "Alex" Carillo, who had an extramarital relationship with Monica. Pineda testified that Carillo was not at Monica and Lopez's home during the day or night of the June 23, 2017 assault.

Monica testified that she had been married to Lopez since 2013 and was still married to him. Monica stated she had aneurysm surgery in 2012 or 2013, and that as a result, her short-term and long-term memory deteriorated. Monica testified that on June 23, 2017, prior to the assault, she and Lopez had been arguing. Monica could not remember the reason for the argument, but stated, "I don't know if it was about cheating because I cheated. We've cheated," and testified that she thought that the cheating was the central topic of the argument. Monica could not remember the specifics of the assault, but testified that "it happened so fast" and "it went from verbally arguing to—to abuse, I guess."

During Monica's testimony, the State and Lopez had a bench conference with the trial court regarding the State's desire to elicit testimony of a prior bad act committed by Lopez—specifically, a previous assault in 2012 where Lopez punched Monica's eye.

4

Lopez objected to relevance, and the trial court overruled the objection. Monica testified that in 2012, after leaving her daughter's birthday party, she went to the hospital because Lopez punched her eye. Monica testified that she felt this incident was her fault because she cheated on Lopez. Monica also testified that she learned she had an aneurysm in 2012 after Lopez's 2012 assault and that Lopez knew about the aneurysm shortly after she learned of it.

On cross-examination, Monica admitted to having an extramarital affair with Carillo, whom she described as her "ex," over a period of time. In addition, Lopez asked Monica: "[Y]ou remember [Carillo] and [Lopez] being in the trailer together at the same time; is that right? You don't remember when [Carillo] came with a knife—" whereupon the State objected and requested a bench conference. After hearing arguments, the trial court excused the jury in order to continue addressing the matter.

After the jury was excused, Lopez explained that he intended to elicit testimony of prior bad acts committed by Carillo through his cross-examination of Monica. With the jury still not present, Lopez first questioned Monica about an incident when Carillo allegedly cut Lopez with a knife:

| [Counsel for Lopez]: | All right, [Monica], there was a time between 2012 and 2017 when [Carillo] and [Lopez] were in your trailer at the same time; is that right? |
| --- | --- |
| [Monica]: | Yes, sir. |
| [Counsel for Lopez]: | And there was a time that [Carillo] threatened [Lopez] with a knife inside your trailer; is that correct? |
| [Monica]: | Yes, sir. |

5

| | |
|---|---|
| [Counsel for Lopez]: | Now, [Carillo] never cut [Lopez] with that knife, did he? |
| [Monica]: | I think he did. |
| [Counsel for Lopez]: | [Carillo] did cut [Lopez]? |
| [Monica]: | Yes. |
| [Counsel for Lopez]: | And, obviously, that caused some of the bad times between you and [Lopez]; is that right? |
| [Monica]: | Yes, the cheating. |
| [Counsel for Lopez]: | And y'all have fought about the cheating, you said both him cheating and you cheating, off and on for years; is that right? |
| [Monica]: | Yes, sir. |

Lopez next questioned Monica about an incident where Carillo assaulted Monica:

| | |
|---|---|
| [Counsel for Lopez]: | [Carillo's] not accused of assaulting you, is he? |
| [Monica]: | Yes. |
| [Counsel for Lopez]: | He is accused of assaulting you? |
| [Monica]: | Yes. |
| . . . . | |
| [Counsel for Lopez]: | I have to ask now a little bit about the incident between you and [Carillo] where he's charged with aggravated assault. Do you remember that incident? |
| [Monica]: | Yes. That recently happened. |
| [Counsel for Lopez]: | Okay. How long ago? This year? |
| [Monica]: | No. Um, it was '20. 2020. 2021. |
| [Counsel for Lopez]: | And can you describe for the judge what happened, how he assaulted you? |

6

| | |
|---|---|
| [Monica]: | Um, I just remember us arguing, and I think he just came behind me, I think, and he hit me. |
| [Counsel for Lopez]: | He came behind you and he hit you? |
| [Monica]: | Yeah, because I was running away. |
| [Counsel for Lopez]: | And do you know what he hit you with? |
| [Monica]: | His fist. |
| [Counsel for Lopez]: | And like [Lopez], [Carillo] was charged with aggravated assault for that, correct? |
| [Monica]: | Yes, sir. |

Lopez also questioned Monica about an incident when Lopez was allegedly assaulted by Carillo or his friends or family:

| | |
|---|---|
| [Counsel for Lopez]: | Now, you are aware as well that shortly after this happened in 2017 where [Lopez] has been— has pled guilty to assaulting you—you are aware that [Carillo] or some of his friends or some of his family beat up [Lopez], aren't you? |
| [Monica]: | Yes, I have heard of it. |
| [Counsel for Lopez]: | And did you see [Lopez] after he was beat up? |
| [Monica]: | Um. |
| [Counsel for Lopez]: | Better question. Did you see his injuries from after he was beat up by those people? |
| [Monica]: | Um, I did see them. |
| . . . . | |
| [Counsel for Lopez]: | All right, [Monica], I'm going to show you three pictures marked as D-1, D-2, and D-3 and ask you: Do those look like the injuries that you saw on [Lopez] after [Carillo] and his people beat him |

7

up?

[Monica]: Yes.

[Counsel for Lopez]: Defense Exhibit 2. Does that look like some more of the injuries?

[Monica]: Yes.

[Counsel for Lopez]: And appears there's a pretty good scalp cut right there too, doesn't it?

[Monica]: Yes.

. . . .

[Counsel for Lopez]: Likewise, Defense Exhibit 3, that's a fair and accurate depiction of the injuries that he had that you saw, correct?

[Monica]: Yes.

. . . .

[Counsel for Lopez]: [Monica], did [Carillo] tell you he did that?

. . . .

[Counsel for Lopez]: You can answer that question.

[Monica]: Did [Carillo] tell me what he said?

[Counsel for Lopez]: Yes.

[Monica]: No.

[Counsel for Lopez]: Did you see [Lopez] get beat up?

[Monica]: Didn't see him.

[Counsel for Lopez]: When [Lopez] told you about that fight and you saw those injuries, was he excited or what was his state of mind? What did he look like? Let me ask you this way. Was he nervous?

8

| | |
|---|---|
| [The Court]: | I would like to also know when she saw him after. |
| [Counsel for Lopez]: | . . .[D]o you remember when he was injured? |
| [Monica]: | I don't remember. |
| [Counsel for Lopez]: | Do you remember if it happened before or after the crime that he's pled guilty to here today? |
| [Monica]: | It was after. |
| [Counsel for Lopez]: | And, again, was [Lopez] in an excited or agitated state? |
| [Monica]: | Excited? No. |
| [Counsel for Lopez]: | Was he upset because he had just gotten his butt kicked? |
| [Monica]: | Oh, yes. |
| [Counsel for Lopez]: | And do you know—well, those look like pretty fresh wounds, don't they? |
| [Monica]: | Yes. |
| [Counsel for Lopez]: | He would have to have been injured shortly before you saw those injuries; is that right? |
| [Monica]: | Yes, sir. |
| [Counsel for Lopez]: | That was fresh blood on there, wasn't it? |
| [Monica]: | Yes. |
| [Counsel for Lopez]: | It wasn't dried blood, was it? |
| [Monica]: | No. |

Lopez requested to admit the photos in addition to Monica's testimony related to this incident. Lopez argued that the evidence and testimony related to this incident went to

the "ongoing nature of the relationship—not between [Monica] and [Carillo]—but between [Lopez] and [Monica]." The trial court disagreed, stating that "this [evidence and testimony] doesn't go to that," ruled that it was not relevant to punishment, and denied its admission.

Lopez next requested to admit the testimony regarding the knife incident, arguing that it went towards the nature of the relationship between Lopez and Monica. Additionally, Lopez argued that the testimony was a mitigating factor as to the charged offense and the 2012 assault where he punched Monica in the eye after her daughter's birthday party. The State argued that the testimony involved a third party and was not permitted by Article 38.371 of the Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 38.371 (stating that in a trial for an offense involving dating or family violence, each party may offer "testimony or evidence regarding the nature of the relationship between the actor and the alleged victim," but that "[t]his article does not permit the presentation of character evidence that would otherwise be inadmissible under the Texas Rules of Evidence or other applicable law"). Lopez confirmed to the trial court his request for admission was being made pursuant to Article 38.371(b). *See id*. § 38.371(b). The trial court sustained the State's objections, ruling that the testimony was not relevant to punishment nor was admissible under Article 38.371. The trial court allowed Lopez to make a final bill of exception:

| [The Court]: | I'll let you make a bill, whatever you want to, but I'm going to overrule—I'll sustain [the State's] objection to the line of questioning about [Carillo] and a knife and his family beating up [Lopez] in this case because I don't think it's relevant. Now, if there's charges pending, you |

know, it's obviously relevant if there's an ag[gravated] assault out there with [Lopez] as the victim or if [Monica] has some other charges I don't know about or other cases pending. But in this case I'm not going to let it in as far as this one is concerned.

[Counsel for Lopez]: My effort here, Judge—and this is just for purposes of the record.

[The Court]: Sure.

[Counsel for Lopez]: I understand how the Court is going to rule on this. My effort on this, it all goes to the nature of the adultery and how the problems in the relationship evolved from 2012 through 2017 shortly before this offense. I did not develop that with her here, okay? But my intent would be to further develop that he was stabbed in the chin, that the knife was broken off in his mouth, okay. And that incident, obviously, would have impact on the relationship between the victim and the defendant and serves as mitigating evidence as to motive about why he did it. I get to try. What's good for the goose is good for the gander here, Judge, in that motive obviously is not relevant at all there at the guilty-not guilty phase. But motive can be relevant in the punishment phase. And the State tries to do that all the time. It's not often that the defense has an opportunity to develop that and use that as a . . .mitigating factor rather than an aggravated factor.

[The Court]: Are you saying he did 2017's acts that he ple[a]d[ed] to because of what? Because of 2012?

[Counsel for Lopez]: No.

[The Court]: Because this happened after 2017. This wouldn't be relevant.

[Counsel for Lopez]: I understand that, Judge. And the Court's ruled on that.

11

| | |
|---|---|
| [The Court]: | And when I say this, what I mean is D-1, D-2, and D-3, the photographs of the injuries. |
| [Counsel for Lopez]: | D-1, D-2, D-3 have to do with an incident where he was jumped by people related to [Carillo]. I understand the Court's ruling on this. What would be further developed from evidence from her is that this knife incident happened in late 2016, early 2017 before the incident where he pled guilty. |
| [The Court]: | This was June of [2017]? |
| [Counsel for Lopez]: | June [2017], yes, sir. And so there was violence directed toward [Lopez] due to— |
| [The Court]: | But by somebody else? |
| [Counsel for Lopez]: | By someone else. |
| [The Court]: | Not by her. |
| [Counsel for Lopez]: | Correct. I'm not saying— |
| [The Court]: | That's why I'm having a hard time. |
| [Counsel for Lopez]: | Where I'm going with that, Judge, is that it goes to—obviously, that goes to the nature of the relationship between the parties and how there had been ups and downs, as everyone has testified to right here. And this down could have contributed to the offense that he pled guilty to, ultimately, to the offense he pled guilty to. |
| [The Court]: | Okay, well, I will take that as your proffer for it. And so I'm still going to sustain the State's objection to that under that line of questioning as well. And we will not go into that in front of the jury. But if there's anything else you need to develop, you are an officer of the court, you can state it, have her back on the stand, but I'm going to still sustain the objection. |

12

| [Counsel for Lopez]: | Judge, what I described right there as to nature of this aggravated assault in late 2016, 2017 by [Carillo] against the defendant— |
|---|---|
| [The Court]: | Right. |
| [Counsel for Lopez]: | —that's the proffer that I'm making. And I can develop that further with her, if the Court needs to, but I believe— |
| [The Court]: | I think that sets it out clearly. You gave some details about a knife in his mouth and chin. So I am still going to sustain the objection. Not going into it in this case. Maybe in for a case another day, but not this one. |

Lopez neither requested nor obtained a ruling from the trial court regarding the admission of Monica's testimony related to Carillo's assault of Monica in 2020 or 2021.

Lopez was sentenced as set forth above and this appeal followed.

### III.    DISCUSSION

By two points of error, Lopez argues that the trial court erred (1) when it limited his cross-examination of Monica concerning violent acts committed against Lopez by Carillo and/or his family and friends, and (2) when it limited his cross-examination of Monica concerning Carillo's assault against Monica. In his brief, Lopez jointly discusses these points of error and raises three sub-issues for both, which we reorganize and construe as two sub-issues. We address each point of error individually.

### A.    Violent Acts Committed Against Lopez

#### 1.    Confrontation Clause Violations

Lopez first contends that the trial court violated his Sixth Amendment right to confrontation when it limited his cross-examination of Monica regarding violent acts

13

committed against Lopez by Carillo and/or his family or his friends. However, the record demonstrates that Lopez did not object on Confrontation Clause grounds.

### i. Applicable Law

The Confrontation Clause of the Sixth Amendment provides a right in both federal and state prosecutions to confront and cross-examine adverse witnesses. *See* U.S. CONST. amends. VI, XIV; *Pointer v. Texas*, 380 U.S. 400, 406 (1965); *Woodall v. State*, 336 S.W.3d 634, 641 (Tex. Crim. App. 2011).

To preserve error for appellate review, a party is required to make a timely objection or make a request or motion to apprise the trial court what the party seeks. *Dollins v. State*, 460 S.W.3d 696, 698 (Tex. App.—Texarkana 2015, no pet.) (citing TEX. R. APP. P. 33.1(a)). Doing so gives the trial court an opportunity to remedy any purported error. *Id.* To "preserve error regarding improperly excluded evidence, a party must timely object, obtain a ruling from the trial court . . . and prove the substance of the excluded evidence via an offer of proof." *Id.* at 698–99 (first citing TEX. R. APP. P. 33.1(a); then citing TEX. R. EVID. 103(a); and then citing *Roberts v. State*, 220 S.W.3d 521, 532 (Tex. Crim. App. 2007)). Confrontation Clause complaints are subject to these same preservation requirements. *In re E.H.*, 512 S.W.3d 580, 586 (Tex. App.—El Paso 2017, no pet.) (citing *Reyna v. State*, 168 S.W.3d 173, 177 (Tex. Crim. App. 2005) (concluding that the appellant failed to preserve his Confrontation Clause complaint because he did not argue to the trial court that the Confrontation Clause demanded admission of the proffered evidence)). Thus, a Confrontation Clause objection must be made at trial or it is waived

14

on appeal. *In re E.H.*, 512 S.W.3d at 586.

###         ii.        Analysis

Here, when the trial court sustained the State's objection to Lopez's cross-examination of Monica regarding the violent acts allegedly committed by Carillo, or his associates, Lopez did not object to the ruling on the basis that the trial court violated his Confrontation Clause rights. Accordingly, Lopez failed to preserve his Confrontation Clause complaint, and we overrule this sub-issue. *See Reyna*, 168 S.W.3d at 179 (explaining that because the appellant "did not articulate" that the Confrontation Clause demanded admission of the evidence, the trial court did not have an opportunity to rule on that rationale and that as the losing party, the appellant "must 'suffer on appeal the consequences of his insufficiently specific offer'"); *In re E.H.*, 512 S.W.3d at 586 (determining that the appellant had not preserved his Confrontation Clause complaint on appeal because the appellant did not object on Confrontation Clause grounds when seeking admission of certain evidence); *Dollins*, 460 S.W.3d at 698–99 (same).

###     2.      Admissibility Under Article 37.07

Lopez next contends that the proffered evidence regarding the violent acts committed against Lopez by Carillo and/or his friends or family was admissible under Article 37.07 of the Texas Code of Criminal Procedure and that reliance on Article 38.371 was not necessary.[3]

###         i.        Standard of Review and Applicable Law

We review a trial court's decision to admit evidence under an abuse of discretion

---

[3] Lopez does not argue on appeal that the proffered evidence was admissible under Article 38.371. *See* TEX. CODE CRIM. PROC. ANN. art. 38.371.

standard. *Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018). A trial court abuses its discretion only when its decision "was so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003). If the trial court's decision is within the zone of reasonable disagreement, it has not abused its discretion, and we defer to that decision. *See Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001). We will uphold the court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002); *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000).

The punishment phase of the trial is directed to the defendant's prior criminal record, his reputation and character, and evidence tending to mitigate punishment. *Thomas v. State*, 750 S.W.2d 234, 235 (Tex. App.—Dallas 1986, no pet.); *see also Guajardo v. State*, No. 13-18-00246-CR, 2021 WL 1047057, at *11 (Tex. App.—Corpus Christi–Edinburg, Mar. 18, 2021, no pet.) (mem. op., not designated for publication). Article 37.07, § 3(a) provides in relevant part:

> Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1). Trial courts possess wide latitude in

16

determining the admissibility of evidence presented at the punishment phase of trial. *See Rogers v. State*, 991 S.W.2d 263, 266 (Tex. Crim. App. 1999).

"Because there are no discrete fact issues at the punishment phase of a non-capital trial, . . . the definition of 'relevant,' as stated in Rule 401 of the Texas Rules of Evidence, does not readily apply to Article 37.07." *Sims v. State*, 273 S.W.3d 291, 295 (Tex. Crim. App. 2008); *see* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1); TEX. R. EVID. 401 (defining relevant evidence). "What is 'relevant' to the punishment determination is simply that which will assist the fact finder in deciding the appropriate sentence in a particular case." *Sims*, 273 S.W.3d at 295.

### ii. Analysis

In his brief, Lopez argues that there is nothing in Rule 404(b) that precludes a defendant from introducing extraneous bad act evidence. *See* TEX. R. EVID. 404(b). We agree that the alleged violent acts committed against Lopez by Carillo and/or his friends or family constitute extraneous crimes within the definition of Rule 404(b). *See id.* However, Lopez ignores that punishment evidence in a non-capital felony trial is governed by Article 37.07, and such violent acts constitute extraneous crimes within the definition of Article 37.07, § 3(a). *See* TEX. CODE CRIM. PROC. ANN. art. 37.07 § 3(a)(1); *Sims*, 273 S.W.3d at 295 (noting that "[p]rior to 1998, Rule 404(c) of the Texas Rules of Evidence discussed the use of character evidence during the punishment phase. However, the Legislature deleted Rule 404(c) in 1998, leaving Article 37.07 of the Code of Criminal Procedure to govern the admission of evidence in a non-capital felony trial."). By its very terms, Article 37.07, § 3(a) allows admission of evidence of an extraneous crime or bad

act that is shown beyond a reasonable doubt by evidence to have been committed by the *defendant or for which he could be held criminally responsible*, "notwithstanding Rules 404 and 405, Texas Rules of Evidence." *See* TEX. CODE CRIM. PROC. ANN. art. 37.07 § 3(a)(1). Here, the alleged extraneous crimes were not committed by or attributable to Lopez and therefore not admissible under Article 37.07, § 3(a). *See id.*

Nevertheless, Lopez argues that the complained-of extraneous acts were relevant to sentencing. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) ("[E]vidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing."). Lopez notes that the extramarital relationship between Monica and Carillo was relevant to punishment, in part because this relationship resulted in Lopez being assaulted twice by Carillo, which Lopez claims the jury could have viewed as a mitigating factor, retribution for this crime, and demonstrates "some basis of [Lopez's] anger." He states that "[t]here is no logical basis to conclude that the fact the acts were those of a third party negates the relevancy of the evidence proffered." Lopez does not provide legal authority for the proposition that extraneous crimes or bad acts committed by third parties against a defendant is "relevant" to sentencing under Article 37.07, and we have found none. Nonetheless, we assume but do not decide that the trial court erred by sustaining the State's objections, and we proceed to determine whether the errors were harmless. *See* TEX. R. APP. P. 44.2.

Generally, errors in sustaining the State's objections to the admission of a defendant's evidence are non-constitutional. *Easley v. State*, 424 S.W.3d 535, 540 (Tex. Crim. App. 2014). Such errors are only considered constitutional errors if the excluded

18

evidence formed a vital portion of the defendant's case. *Id.* Evidence forms a vital portion of a defendant's case if the exclusion effectively prevents the defendant from presenting a defense. *See id.* We note that Lopez changed his plea of "not guilty" to "guilty" during the guilt-innocence phase of his trial and the proffered evidence was for purposes of punishment. We note that Lopez does not argue that the trial court's ruling prevented him from presenting a defense at punishment, and the record demonstrates he presented two character witnesses during the punishment phase. During his closing arguments for the punishment phase, Lopez admitted his actions were shameful and inappropriate for the community, that "[n]o one deserves that" and "[t]here is no excuse" for severely assaulting Monica. Lopez suggested, among other things, that his guilty plea was an acceptance of responsibility and a mitigating factor, and asked the jury to consider community supervision. In light of the circumstances here, we hold that the trial court's exclusion of the proffered evidence did not preclude Lopez from presenting a defense. Therefore, the alleged errors are non-constitutional. *See id.*

Non-constitutional errors that do not affect the defendant's substantial rights must be disregarded. *See* TEX. R. EVID. 103(a); TEX. R. APP. P. 44.2(b); *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000). A substantial right is affected if the error had a substantial and injurious effect or influence in determining the jury's verdict. *See Morales*, 32 S.W.3d at 867. When evaluating harm from non-constitutional error flowing from the exclusion of relevant evidence, we examine the record as a whole, and if we are fairly assured that the error did not influence the jury or had but a slight effect, we conclude that the error was harmless. *Ray v. State*, 178 S.W.3d 833, 836 (Tex. Crim. App. 2005)

19

(citing *Morales*, 32 S.W.3d at 867).

In this case, Lopez changed his plea of "not guilty" to "guilty" during the guilt-innocence phase of his trial after the State presented its first witness. Pineda testified that he had witnessed Lopez strike Monica "all over" with his fists and stomp Monica's face with his feet while she was on the floor, using her arms to protect herself. Pineda also testified that he grabbed Lopez twice to get him off of Monica before Lopez stopped his assault. The evidence demonstrated that during the 911 call made after the assault, Monica told the operator that Lopez had stomped on her face and hands because she told Lopez she was leaving him. The State presented evidence as to the severity of Monica's injuries which included a broken nose, a contusion to the eye that was nearly swollen shut, and a contusion on her left hand. Maria Luther, Monica's mother, testified that she took care of Monica after the 2017 assault by Lopez, providing her a private room in her home. Luther testified that during this time, Monica was quiet, wouldn't come out of the room, and appeared to be in pain.

In his brief, Lopez argues that the proffered testimony would have provided the jury insight into Lopez's relationship with Monica and would have revealed additional facts underlying Lopez's anger. However, Lopez does not explain how evidence of his anger would have been mitigating. Nonetheless, the evidence presented at the punishment phase provided a sufficient factual basis for the jury to readily evaluate Lopez and Monica's contentious relationship and Lopez's anger. Both Pineda and Monica testified as to Monica's extramarital affair with Carillo. Monica testified regarding an extraneous offense from 2012 where Lopez punched Monica in the face after her daughter's birthday

20

party and that she felt this incident was her fault because she cheated on Lopez. Monica also testified that Lopez knew about her aneurysm shortly after this incident. Luther also testified regarding another extraneous offense committed by Lopez in 2012. Luther testified she observed that Monica had a swollen bite mark and bruising on her forehead and that Monica had told Luther that she got those injuries from Lopez.

We also note that during his closing argument, Lopez stated to the jury "[n]o one deserves that," "[t]here is no excuse," and that "[i]n pleading guilty, all those elements of that charge, [Lopez's] admitting to. He's saying, yes, I did it. Beyond a reasonable doubt I did it. Those actions are shameful. They're shameful. They're inappropriate in our community. No one is going to argue differently." Lopez also stated that he had "done right" by pleading guilty, and that it was a "sacrifice" made for the benefit of Monica and other witnesses, and that it was an acceptance of responsibility, which he suggested was mitigating. Lopez asked the jury to consider the best interest of his children and grandchildren, and give him community supervision. Given his closing arguments, we cannot say that the excluded evidence went to the heart of Lopez's defense on punishment. *See Melgar v. State*, 236 S.W.3d 302, 309 (Tex. App.—Houston [1st. Dist.] 2007, pet. ref'd.) (finding harmful error where excluded evidence "went to the heart of appellant's sole defense").

Lopez argues that the excluded evidence would have established that he had been subjected to some punishment in the form of a beating that could be considered mitigating. We construe this argument as referencing the incident where Lopez was allegedly beat up by Carillo, his friends, or his family. We note that Monica testified that

she had merely heard that Carillo or his friends or family had beaten up Lopez after Lopez assaulted Monica in 2017, she did not witness this beating, but saw Lopez's injuries. The proffered testimony did not make clear exactly when the alleged beating occurred, or why it happened.[4] After reviewing the record as a whole, including Lopez's plea of guilty to the 2017 assault against Monica, the evidence of her resulting injuries, the evidence of Lopez's previous assaults against Monica, and Lopez's arguments at closing, we conclude that the trial court's alleged error in excluding the proffered testimony of the beating incident did not influence the jury, or had but a slight effect. *See Ray*, 178 S.W.3d at 846. Likewise, after reviewing the record as a whole, we conclude that the trial court's alleged error in excluding the proffered testimony of the knife incident did not influence the jury, or had but a slight effect. *See id.*

Therefore, we conclude that any alleged error in excluding the proffered evidence of the violent acts against Lopez was harmless non-constitutional error that did not affect his substantial rights and must be disregarded. *See* TEX. R. EVID. 103(a); TEX. R. APP. P. 44.2(b); *Ray*, 178 S.W.3d at 836. We overrule this sub-issue and the entirety of Lopez's first point of error.

## B.    Carillo's Assault of Monica

To preserve error for appellate review, Lopez was required to make a timely objection or make a request or motion to apprise the trial court that it sought admission of Monica's testimony of Carillo's assault of her. *See Dollins*, 460 S.W.3d at 698 (citing

---

[4] In connection to this beating incident, Monica was asked if she remembered when Lopez was injured and she replied that she did not remember. When asked the follow-up question of whether it happened before or after his 2017 assault of her, Monica replied it was after.

22

TEX. R. APP. P. 33.1(a)). The record demonstrates that Lopez neither requested nor obtained a ruling from the trial court regarding the admission of Monica's testimony related to Carillo's assault of Monica in 2020 or 2021. Accordingly, Lopez failed to preserve his complaint, and we overrule his second point of error. *See id.*

## IV.    CONCLUSION

We affirm the trial court's judgment.

NORA L. LONGORIA
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
27th day of October, 2022.