Harold Lee MATZ, Appellant,

v.

The STATE of Texas, State.

No. 2-97-613-CR.

Court of Appeals of Texas,
Fort Worth.

March 11, 1999.

Ordered Published March 25, 1999.

Davis McCown, Fort Worth, for Appellant.

Tim Curry Dist. Atty., Charles M. Mallin, Tanya S. DaHoney, Christy Jack, Asst. Crim. Dist. Attys., Fort Worth, for State.

PANEL A: DAY, RICHARDS, and BRIGHAM, JJ.

## OPINION

SAM J. DAY, Justice.

A jury convicted Harold Lee Matz of aggravated sexual assault of a child and assessed punishment at life imprisonment and imposed a $10,000 fine. In his first four points, Matz challenges several of the trial court's evidentiary rulings. In his fifth point, Matz argues that the cumulative errors in this case denied him a fair trial. In his sixth point, he contends that the trial court erred in failing to define the term "reasonable doubt" for the jury in the punishment phase, as it related to proof of extraneous offenses.

We affirm.

## I. BACKGROUND

The victim, T.M., was seven years old when she moved into Matz's home in Grapevine with her mother (D.M.) and two brothers. About two weeks after moving into the house, T.M. witnessed her mother and Matz engaging in oral sex. Not long afterward, Matz and D.M. began including the little girl in their sexual encounters, forcing T.M. to masturbate Matz and perform oral sex on him.

The abuse did not stop there. One day, T.M. was taking a shower after spending the afternoon at Grapevine Lake with her mother, her younger brother, Matz, and a man named Gerry Coleman. While T.M. was still in the shower, Coleman entered the bathroom and told T.M. to turn around so that he could wash her back. Matz came into the bathroom, disrobed, and got into the shower with T.M. Matz then inserted his finger into T.M.'s anus and vagina. After T.M. got out of the shower, Matz took her to his bedroom. Matz then performed oral sex on T.M. as Coleman held T.M.'s hand, masturbating himself with his other hand. T.M.'s mother was in the room with them, reading a pornographic magazine.

On another day, Matz made T.M. rub baby oil on his penis. Afterward, he spread baby oil on T.M.'s back and bottom, placed his penis in the crack of her butt, and ejaculated on her back.

Coleman eventually called the police and tipped them off to the abuse. The police notified Michelle Patterson, a Child Protective Services (CPS) caseworker, who contacted T.M.'s father to set up an interview with T.M. During the interview, T.M. initially denied the abuse. Later in the interview, T.M. said that she had been afraid of getting into trouble if she talked about what had happened. She then gave Patterson a detailed

account of the sexual abuse she had suffered. After a second interview with CPS, T.M. was taken to Cooks Children's Medical Center for a sexual assault exam, where she also told Dr. Jan Lamb about the abuse. Matz was subsequently arrested at his home and indicted for the offense of aggravated sexual assault.

## II. ADMISSION OF EVIDENCE

### A. Standard of Review

As an appellate court, we review the trial court's decision to admit or exclude evidence under an abuse of discretion standard. *See Green v. State*, 934 S.W.2d 92, 101–02 (Tex. Crim.App.1996), *cert. denied*, 520 U.S. 1200, 117 S.Ct. 1561, 137 L.Ed.2d 707 (1997); *Montgomery v. State*, 810 S.W.2d 372, 379–80 (Tex.Crim.App.1990). Therefore, we will not reverse a trial court as long as its ruling was within the "zone of reasonable disagreement." *Green*, 934 S.W.2d at 102; *Montgomery*, 810 S.W.2d at 391.

### B. Evidence of T.M.'s Prior Sexual Conduct

■ In his first point, Matz contends that the trial court erred in excluding evidence that T.M. had been abused by someone other than Matz. Outside the presence of the jury, T.M. said that her father's fiancé's twelve-year-old son, Adam, had also sexually abused her. T.M. said that Adam made her do "kind of" the same bad things that Matz made her do. Specifically, she said that Adam touched her "private parts," and made her touch his "privates." Adam also performed oral sex on T.M. and made her rub his penis. T.M. said these acts happened before the abuse in the present case was reported.

Matz's attorney argued that this evidence was relevant as an alternative basis of information to explain how T.M. (who was nine years old at the time of trial) was so knowledgeable about sexual matters. At trial, T.M. testified in graphic detail about the sex acts Matz and D.M. forced her to perform. For example, T.M. said that her mother showed her how to rub Matz's "private part," and demonstrated for the jury how she moved her hands to masturbate Matz. She

said that D.M. and Matz had also taught her how to perform oral sex on Matz. T.M. testified that Matz put his hands on the back of her head, pulling it up and down while his penis was in her mouth. Because the average nine-year-old would not be expected to explain sexual matters so explicitly, Matz's attorney argued that without the information of the third-party assault, the jury would infer that T.M. could not have known about these matters unless Matz did them to her. The trial court held that the evidence was irrelevant and denied Matz's request.

On appeal, the State argues that this evidence was inadmissible under rule 412 of the Texas Rules of Evidence, the rape shield statute. This rule excludes evidence of specific instances of an alleged victim's past sexual conduct in a trial for aggravated sexual assault unless the evidence falls within one of several enumerated categories set out in rule 412(b)(2). *See* Tex.R. Evid. 412(b)(2). Evidence of specific instances of an alleged victim's past sexual behavior is only admissible if it is evidence (A) to rebut or explain scientific or medical evidence offered by the State, (B) of past sexual behavior with the accused, offered on the issue of consent, (C) that relates to the motive or bias of the alleged victim, (D) that is admissible under Rule 609, or (E) that is constitutionally required to be admitted. *See id.*

■ A number of states have held that the United States Constitution compels the admission of evidence to show an alternative basis for a child victim's knowledge of sexual matters. *See, e.g., State v. Dodson*, 219 Wis.2d 65, 580 N.W.2d 181, 191 (1998); *State v. Budis*, 125 N.J. 519, 593 A.2d 784, 791 (1991); *Commonwealth v. Ruffen*, 399 Mass. 811, 507 N.E.2d 684, 688 (1987); *State v. Howard*, 121 N.H. 53, 426 A.2d 457, 462 (1981). The constitutional provisions most often implicated in cases of this type are the sixth amendment right of confrontation and the fourteenth amendment due process right to a fair trial. *See State v. Clarke*, 343 N.W.2d 158, 161 (Iowa 1984). The Constitution, however, requires only the introduction of otherwise relevant and admissible evidence. *See United States v. Nixon*, 418 U.S. 683, 711, 94 S.Ct. 3090, 3109, 41 L.Ed.2d 1039

(1974). Thus, before evidence of an alleged victim's sexual behavior may be admitted under rule 412(b)(2)(E), the defendant must first establish the relevancy of the evidence to a material issue in the case. *See* Tex.R. Evid. 401. If the evidence is not relevant, it is not admissible. *See* Tex.R. Evid. 402. To show the relevancy of a child victim's prior sexual conduct as an alternate source of sexual knowledge, the defendant must establish that the prior acts clearly occurred and that the acts so closely resembled those of the present case that they could explain the victim's knowledge about the sexual matters in question. *See State v. Pulizzano*, 155 Wis.2d 633, 456 N.W.2d 325, 335 (1990).

In this case, Matz failed to establish that the prior acts were sufficiently similar to be relevant. While testifying that Matz rubbed his penis on her back, T.M. described feeling "warm stuff" come out of Matz's penis onto her back. Matz then told T.M. that "this is the stuff that comes out of men's private parts." T.M. also testified that Matz used baby oil when forcing her to masturbate him, and when he rubbed his penis on her bottom.[1] Furthermore, T.M. told the medical examiner that Matz had sodomized her, but stopped because "it hurt too much." On voir dire, however, T.M. did not mention using baby oil with Adam or being sodomized by him. Moreover, she specified that unlike Matz, Adam never ejaculated.

In addition, T.M.'s detailed accounts of the sexual acts she was forced to participate in at Matz's home bears little or no resemblance to her vague account of Adam's abuse. For example, T.M. stated that Matz told her to "sit on his face" while he put his tongue inside her vagina. While Matz was performing oral sex on T.M., she said she needed to go to the bathroom. Matz told her "just pee on my face." Finally, T.M. told the medical examiner that she saw Matz "licking" D.M.'s vagina and putting his penis between D.M.'s breasts. Matz offers no explanation of how the evidence of Adam's abuse would tend to explain her understanding of these explicit sexual matters.

Furthermore, a nine-year-old child's ability to describe sexual conduct need not be acquired solely from sexual behavior. Here, the medical examiner testified that T.M. said Matz forced her to watch pornographic movies with him. In addition, T.M. said that there were "nasty" (i.e., pornographic) magazines in the house which her mother read while Matz abused T.M. on different occasions. Both the magazines and the movies provide another explanation for T.M.'s lack of innocence about sexual matters.

Matz also argues that this evidence was relevant to show that T.M. tended to fantasize about such matters or that she had been assaulted by a third person and was somehow attributing that abuse to Matz. However, Matz has provided no evidence or authority to show that either of these theories has any merit. Because Matz failed to establish how the evidence of T.M.'s past sexual conduct was relevant in this case, we hold that the trial court's decision to exclude it was not outside the zone of reasonable disagreement. We overrule point one.

### C. CPS Videotaped Interview

■ In point two, Matz complains that the trial court erred in admitting CPS's videotaped interview with T.M. because it was hearsay not made admissible by any exception. Article 38.071 of the rules of criminal procedure provides that under certain circumstances, a recording of an oral statement of a child sexual assault victim is admissible notwithstanding application of the hearsay rule. *See* Tex.Code Crim. Proc. Ann. art. 38.071 (Vernon Supp.1999). However, this rule does not apply where the child victim is available to testify. *See id.* art. 38.071, § 1. Matz contends that because T.M. testified in this case, the trial court should have excluded the videotape.

■ Assuming that the trial court erred in admitting the videotape, Matz nevertheless failed to preserve anything for our review on this issue. It is well-settled that where substantially the same evidence complained of on

---

1. A large bottle of baby oil, approximately one-quarter full, was seized from Matz's home and admitted into evidence.

appeal is admitted before the jury without objection, any error is waived. *See Penry v. State,* 691 S.W.2d 636, 655 (Tex.Crim.App. 1985), *cert. denied,* 474 U.S. 1073, 106 S.Ct. 834, 88 L.Ed.2d 805 (1986); *Nathan v. State,* 788 S.W.2d 942, 945 (Tex.App.—Fort Worth 1990, no pet.); *Salinas v. State,* 625 S.W.2d 397, 401 (Tex.App.—San Antonio 1981, no pet.). In his appellate brief, Matz concedes that the CPS videotape "essentially repeated the testimony of [T.M.]," and the record reflects that he never objected to T.M.'s testimony about the abuse. Because substantially the same evidence that appeared in the videotape was admitted elsewhere without objection, any error in admitting the tape was waived. Point two is overruled.

### D. Testimony About Sex–Related Materials Found In Matz's Home

■ In points three and four, Matz argues that the trial court erred in allowing the State to introduce testimony about sex-related materials seized from his home. Matz complains that Officer Richard Bradshaw testified that the following items were seized from Matz's home: seventy-nine pornographic magazines; twelve pornographic videotapes; Polaroid pictures of unidentified adults engaged in sex acts; an anatomically-correct doll; a vibrator; and a jar of "Banana Whipped Cream For Lovers Only." He contends that this evidence was irrelevant, improper character evidence, and its prejudicial effect substantially outweighed any probative value. Matz also complains about the admission of a photograph of his nightstand showing a large bottle of baby oil and a stack of magazines. In the photo, a magazine caption for an article in the top magazine read, *"She is a dominating bitch mistress of the worse kind."* Matz contends that this was evidence of an extraneous bad act that indicated to the jury that he was interested in deviant sexual practices.

A careful review of the record reveals that Matz failed to properly preserve error regarding most of the objectionable items. At trial, T.M. testified that her mother read pornographic magazines while Matz molested her on different occasions. In addition,

Lamb testified that T.M. said Matz forced her to watch pornographic movies with him. Because Matz did not object to the admission of that testimony and it is substantially the same as what he now complains about on appeal, Matz waived any error regarding Bradshaw's testimony about the pornographic magazines and videotapes. *See Penry,* 691 S.W.2d at 655. Likewise, by not objecting to T.M.'s testimony that there were pornographic magazines in Matz's home, he waived error, if any, in admitting a photograph that showed the cover of one of the magazines. *See id.*

■ Moreover, at no time did Matz's attorney object to the officer's testimony about either the vibrator or the anatomically correct doll. Because he did not object, no error on the admissibility of these items is preserved for our review. *See* TEX.R.APP. P. 33.1(a).

■ Given our disposition of the above items, the only evidence that Matz complains about on which he properly preserved error was the officer's testimony about the Polaroid pictures and the can of whipped cream. Under rule 44.2 of the Texas Rules of Appellate Procedure, even if the trial court erred in admitting this testimony, we must disregard the error as long as it is not of constitutional magnitude and did not affect Matz's substantial rights. *See* TEX.R.APP. P. 44.2. An appellant's substantial rights are affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *See King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App.1997); *Coggeshall v. State,* 961 S.W.2d 639, 643 (Tex.App.—Fort Worth 1998, pet. ref'd) (en banc op. on reh'g).

In this case, Matz does not complain that the trial court's alleged error is of constitutional dimension, nor do we find that it is. Assuming without deciding that the trial court erred in allowing Bradshaw to testify that the police seized a can of "Banana Whipped Cream for Lovers Only" and photos of unidentified adults engaging in sex acts, we find that the alleged error did not improperly influence the jury's verdict. First, we fail to see how the photographs were any more prejudicial than the unobjected-to testimony from T.M. and Lamb that there were

pornographic videotapes and magazines in Matz's home. Second, in light of the abundance of evidence admitted without objection, or on which Matz waived error, which tended to establish that he regularly engaged in behavior that more conservative members of the jury might view as deviant (e.g., that he regularly watched pornographic movies, that he had an anatomically correct doll in his home, etc.), any error in admitting the testimony about the photos and the whipped cream could not have had a substantial influence on the jury's decision in this case. Because the alleged error, if any, did not affect Matz's substantial rights, we must disregard it. *See* TEX.R.APP. P. 44.2(b). We overrule points three and four.

## III. CUMULATIVE ERROR

In his fifth point, Matz contends that the cumulative errors in the above matters deprived him of a fair trial. However, we held in point one that the trial court did not err in excluding evidence that T.M. had been abused by a third party. In point two, Matz failed to preserve any error for our review. He likewise waived error regarding most of the issues raised in points three and four, and the error that was preserved did not affect his substantial rights. In light of our disposition of the foregoing points, we hold that any alleged error committed by the trial court on which Matz properly preserved error does not constitute cumulative error. Point five is overruled.

## IV. "REASONABLE DOUBT" DEFINITION IN PUNISHMENT CHARGE

■ In his sixth point, Matz argues that the trial court erred in failing to define the term "reasonable doubt" for the jury in the sentencing phase of his trial after the State introduced evidence of extraneous offenses. The jury charge at punishment included an instruction on reasonable doubt as to the extraneous offenses, stating:

> You are instructed that if there is any testimony before you in this case regarding the Defendant's having committed offenses other than the offense alleged against him in the indictment in this case, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such offenses, if any were committed, and even then you may only consider the same in determining the appropriate punishment of the defendant in this case and not as punishment for any extraneous conduct and for no other purpose.

Matz objected to the charge and requested that the court include the same definition of "reasonable doubt" that was given in the guilt-innocence charge.[2] The trial court overruled the objection and denied Matz's request.

In *Mitchell v. State,* the court of criminal appeals held that it was error for a trial court to refuse a defendant's request for an instruction to the jury at the punishment phase on the burden of proof regarding extraneous offenses. *See Mitchell,* 931 S.W.2d 950, 954 (Tex.Crim.App.1996). However, the *Mitchell* court specifically left open the issue of whether the failure to include a reasonable doubt definition in the punishment charge constitutes error. Nevertheless, a number of the appellate courts have addressed this question, with varying results.[3] After scruti-

2. The definition given at guilt-innocence tracked the definition approved of in *Geesa v. State,* 820 S.W.2d 154, 162 (Tex.Crim.App.1991).

3. *See Fields v. State,* 966 S.W.2d 736, 742 (Tex. App.—San Antonio 1998, pet. granted) (reversing and remanding for new trial on punishment because trial court erred in failing to define "reasonable doubt" in punishment charge; error was constitutional in nature and appellate court could not say beyond a reasonable doubt that error did not contribute to punishment); *Coleman v. State,* 979 S.W.2d 438, 443 (Tex.App.—Waco 1998, no pet.) (holding that trial court did not err in failing to give reasonable doubt definition in punishment charge where defendant did not object and definition was defined in guilt-innocence charge); *Cormier v. State,* 955 S.W.2d 161, 162–63 (Tex.App.—Austin 1997, no pet.) (holding that where defendant failed to object, error in omitting reasonable doubt definition in punishment charge, if any, did not egregiously harm the defendant); *Splawn v. State,* 949 S.W.2d 867, 873–75 (Tex.App.—Dallas 1997, no pet.) (holding that trial court erred in refusing defendant's request for reasonable doubt definition in punishment charge, but under *Almanza* standard, defendant was not harmed by the omission); *Levy v. State,* 860 S.W.2d 211, 213 (Tex.App.—Texarkana 1993, pet. ref'd) (holding

nizing these cases, we find the Dallas Court of Appeals' rationale on this issue to be persuasive:

> [R]elevant case law shows that the importance of a charge on reasonable doubt has increased, not decreased, with the passage of time. We also note the court of criminal appeals' statement in *Mitchell* that the use of extraneous offenses during the punishment phase should be analogous to that of the guilt/innocence phase of trial regarding burden of proof. Given the importance of the reasonable doubt charge, we hold that the *Geesa* paragraphs defining reasonable doubt as to extraneous offenses must be included in the jury charge at the punishment phase when requested.

*Splawn,* 949 S.W.2d at 874 (citations omitted). We agree that a defendant who requests a reasonable doubt definition in the punishment charge is entitled to receive that instruction. Accordingly, we hold that the trial court erred in refusing Matz's request for a definition of reasonable doubt in the punishment charge.

■ Matz also contends that the trial court's refusal to give the definition is *per se* reversible error, i.e., not subject to a harm analysis. We disagree. In *Mann v. State,* 964 S.W.2d 639 (Tex.Crim.App.1998), the court of criminal appeals held that jury charge errors are not subject to the general harmless error analysis set forth in former rule 81(b)(2) of the rules of appellate procedure (now TEX.R.APP. P. 44.2(a)). *See Mann,* 964 S.W.2d at 641. The *Mann* court reiterated the appropriate method for analyzing alleged error in the jury charge. First, the reviewing court must determine whether the charge actually contains error. *See id.* Second, if error is found, the appellate court must determine whether sufficient harm resulted from the error to require reversal. *See id.*

■ The standard to determine whether sufficient harm resulted from the charging error to require reversal depends upon whether the appellant objected. *See Abdnor v. State,* 871 S.W.2d 726, 732 (Tex.

Crim.App.1994) (citing *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984) and *Arline v. State,* 721 S.W.2d 348, 351 (Tex.Crim. App.1986)). Where there has been a timely objection made at trial, an appellate court will search for only "some harm." *Id.* By contrast, where the error is urged for the first time on appeal, a reviewing court will search for "egregious harm." *Id.* In either case, the degree of harm must be assayed in light of the entire jury charge, the state of the evidence (including the contested issues and the weight of the probative evidence), the argument of counsel, and any other relevant information revealed by the trial record as a whole. *See Hutch v. State,* 922 S.W.2d 166, 171 (Tex.Crim.App.1996); *Arline,* 721 S.W.2d at 351.

■ Because Matz objected to the omission of the definition, we must reverse if we find the presence of any harm, no matter how slight. *See Hutch,* 922 S.W.2d at 171. As noted above, the jury in this case was properly instructed in the punishment charge that it could not consider the evidence of extraneous offenses unless it found beyond a reasonable doubt that Matz had committed the acts. Less than twenty-four hours previously, the jury received the court's charge at the guilt-innocence phase containing the *Geesa* reasonable doubt definition. Nothing in the record suggests that the jury had any reason to believe that the definition of reasonable doubt to be applied in the punishment phase was different than the one given during guilt-innocence.

Moreover, in his closing argument, Matz's attorney reminded the jury of the court's charge and admonished the panel that unless it found that the extraneous acts were proven beyond a reasonable doubt, those acts could not be considered. He also instructed the jury to apply the same definition of reasonable doubt used in the guilt phase to the punishment considerations. Therefore, the jury knew what definition to apply in evaluating the extraneous offense evidence because the defense told them to use the same ap-

that trial court did not err in denying defendant's request for reasonable doubt definition in punishment charge because jury was reminded it

was bound by earlier definition in guilt-innocence charge).

proach it had used the day before in determining Matz's guilt.

Finally, although the jury imposed the maximum sentence, we believe this outcome is attributable to the heinous nature of Matz's crime and the abundance of evidence at the punishment hearing indicating that Matz had previously molested several other children, rather than the trial court's failure to define "reasonable doubt" in the punishment charge. Because the record does not reflect that the trial court's error harmed Matz, we overrule point six.

## V.  CONCLUSION

Having overruled Matz's points on appeal, we affirm the trial court's judgment.