

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-25-00032-CR

———————————————

THOMAS MUNOZ, Appellant

V.

THE STATE OF TEXAS

On Appeal from Criminal District Court No. 1
Tarrant County, Texas
Trial Court No. 1779341

Before Womack, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Wallach

# MEMORANDUM OPINION

Appellant Thomas Munoz appeals his convictions on two counts of indecency with a child by contact. *See* Tex. Penal Code Ann. § 21.11(a)(1). In three issues, Munoz argues that the trial court erred by excluding evidence of extraneous sexual offenses committed by others and by admitting hearsay over his objection. We affirm.

## Background

Munoz does not challenge the sufficiency of the evidence supporting his convictions. To inform our analysis, however, we will summarize the pertinent facts.

In 2023, M.S.,[1] then 33 years old, called the Fort Worth Police and reported that Munoz, one of her uncles, had molested her for several years in the 1990s. After interviewing M.S., Detective John Oldham obtained a warrant for Munoz's arrest. After Munoz was arrested, Detective Oldham interviewed him.[2] A grand jury charged Munoz with two counts of aggravated sexual assault of a child and two counts of indecency with a child by contact.

At Munoz's trial, the State made and the trial court granted two motions in limine concerning the facts that (1) M.S. "was also the victim of a sexual assault in

---

[1]To protect the complainant's identity, *see* Tex. R. App. P. 9.10(a)(3), we refer to her and her family members—except for Munoz—by initials.

[2]Munoz was hospitalized when Detective Oldham interviewed him. Video of that interview was admitted into evidence and played to the jury. Because the contents of that video are not essential to our opinion, we will not discuss them. *See* Tex. R. App. P. 47.1.

around 2008 when she was 16 years old" and that "three other men [who we]re not related to her or [Munoz] . . . were convicted for those offenses" and (2) M.S.'s father, C.S., "was convicted in the late [19]90s down in Jefferson County of sexual assault of a child involving a[n] unrelated female."

M.S. testified that in 1993, her father abandoned the family, and she, her two sisters, and their mother moved in with their grandparents (M.S.'s mother's parents) in Fort Worth. Munoz and another uncle were also living at the house. M.S. testified that "the first incident" with Munoz occurred later that year. She recalled that she was three years old and that it was nighttime. She testified that she "was by the refrigerator, . . . messing with the magnets, and [Munoz] came up behind [her] and . . . started lifting [her] legs up and" touching her vagina. She testified that she knew "for sure it was" him because she had seen him when she was in the kitchen. She remembered that "he had this alcohol breath smell to him."

M.S. testified that the incident in the kitchen "was just the beginning" and that it "felt like [Munoz was abusing her] every single night." She described the pattern of abuse thusly:

> I would dread going to bed because I knew once he got home, he would wreak [sic] of alcohol. He would come into the living room, and he would start -- he would put his hands underneath my pants, and then he would start -- and then he would put his hands in my underwear, and then he would start touching my vagina, and he would start rubbing it. And I didn't know what was going on. I would just always act like I was sleeping.

She testified that she did not remember the last time that Munoz touched her but that he stopped around 1997. She testified that "it was always the same thing," except for two instances when he called her into his bedroom. She described the room as "pitch black," and she remembered him putting his hands in her vagina and "playing with" her.

But she testified that he also put her hand on his penis. She claimed that she did not know what she was touching at the time, but she remembered "grabbing it and squeezing it." She said that she "asked him what it was, and he didn't say anything, and that went on for just a few minutes." She also testified that she was "100 percent sure" that this was actually something that had happened to her; she knew Munoz because of his "super dark" bedroom, his voice, and the familiar alcohol scent to his breath.

M.S. testified that, when she was five years old, she told her mother and grandmother what was happening. M.S. said that she felt protected in that moment because her grandmother got a doll out and asked her where Munoz was touching her, and M.S. told her. M.S. "thought something was going to happen" and that "all of it would stop," but it did not. She testified that her grandmother "stated that if we said anything, that we would get kicked out.  And we . . . weren't in any position for that to happen."

M.S. also testified that she had sought therapy as an adult and had told the counselor about being sexually abused by Munoz. During cross-examination, Munoz

4

asked the trial court for permission to get into " [e]verything she told her counselor after she mentioned her counseling records on the stand," including that she had "been forcibly raped, gang raped by other people and drugged," and that her father was "in prison for the same exact contact she[ wa]s accusing [Munoz] of." The State objected, and the trial court sustained the State's objections but held an in camera hearing on the excluded testimony. *See* Tex. R. Evid. 412(d)(2)(A).[3]

After the State rested, Munoz called Dr. Trent Terrell, an experimental psychologist specializing in the study of eyewitness memory. Dr. Terrell testified about human memory and how someone can be mistaken in her recollection of events without "lying." He also discussed the concept of "transference," which he described as "when you kind of take ideas or information you have from one source and then you transfer it or place it onto another source." He testified that if there was a different perpetrator in this case, then it was "a possibility" that M.S. could have mixed up the individuals.

---

[3]Texas Rule of Evidence 412 has been amended since Munoz's trial. Supreme Court of Tex., *Repeal of Current Texas Rule of Evidence 412 and Adoption of New Texas Rule of Evidence 412*, Misc. Docket No. 25-9064 (Aug. 29, 2025). In this opinion, we cite only the current version of the rule. The language from the version that we cite is not substantively different than the corresponding language in the version of Rule 412 in effect at the time of Munoz's trial.

The record of the trial court's Rule 412 hearing is sealed. *See* Tex. R. Evid. 412(e). The facts of the extraneous sexual assault against M.S. that we include in this opinion are taken solely from what was introduced into the record in open court.

Munoz's sister M.M.[4] and mother, E.M., also testified for his defense. They both recalled a period in the 1990s when Munoz, M.S., and her mother and sisters were all living in the house in Fort Worth, but they denied ever being told that Munoz had touched or otherwise sexually abused M.S. E.M. denied ever showing M.S. a doll and asking her to show her where Munoz had allegedly touched her. M.M. testified that she did not think it was possible for someone to have sexually abused M.S. repeatedly without being noticed "because someone was always at home." She also testified that her father "was very strict," did not allow "any drinking in the house," and would not have allowed anyone who regularly smelled of alcohol to come into the house. She acknowledged that her brothers drank but that "they could not drink in the house." She also testified that there was a period of "maybe two or three weeks" when M.S.'s father was also living in that house, but she did not specify exactly when that period was. The jury acquitted Munoz on the two aggravated-sexual-assault counts but convicted him on both indecency counts and, after hearing more evidence and arguments at the trial on punishment, assessed his punishment on each count at 20 years' confinement and a $5,000 fine.

## Analysis

In Munoz's first two issues, he complains of the trial court's exclusion of testimony that he wanted to elicit at trial (1) regarding M.S. having been sexually

---

[4]Not M.S.'s mother.

6

assaulted when she was 16 and (2) regarding her father's conviction for sexual assault of a child under 14. His remaining issue complains that the trial court erroneously admitted testimony that he characterizes as hearsay. We review a trial court's ruling to admit or exclude evidence for an abuse of discretion and will not reverse the ruling of the trial court absent a clear abuse of discretion. *Hart v. State*, 688 S.W.3d 883, 891 (Tex. Crim. App. 2024); *Bautista v. State*, 189 S.W.3d 365, 368 (Tex. App.—Fort Worth 2006, pet. ref'd). As long as the trial court's ruling is within the "zone of reasonable disagreement," there is no abuse of discretion, and the trial court's ruling will be upheld. *De La Paz v. State*, 279 S.W.3d 336, 343–44 (Tex. Crim. App. 2009) (quoting *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g)).

## I. Excluded Evidence of M.S. Being Sexually Assaulted as a Teenager

In Munoz's first issue, he argues that the trial court erred in excluding evidence of M.S.'s previous sexual assault at the hands of other men. Rule 412(d)(2)(B) provides that a defendant may not offer evidence of a specific instance of an alleged victim's past sexual behavior unless the trial court

> determines that the probative value of the evidence outweighs the danger of unfair prejudice to the alleged victim and that the evidence:
>
> (i) is necessary to rebut or explain scientific or medical evidence offered by the attorney representing the [S]tate;
>
> (ii) concerns past sexual behavior with the defendant and is offered by the defendant to prove consent, if the lack of consent is an element of the offense;

7

> > (iii) relates to the alleged victim's motive or bias;
>
> > (iv) is admissible under Rule 609; or
>
> > (v) is constitutionally required to be admitted.

Tex. R. Evid. 412(d)(2)(B). Munoz contends "that the evidence of the prior sexual assault was neither reputation evidence of [M.S.'s] past sexual behavior, nor a specific instance of her past sexual behavior." He does not explain how evidence that M.S. was sexually assaulted by three men when she was 16 is not evidence of a specific instance of her past sexual behavior or support this contention with any authorities, *see* Tex. R. App. P. 38.1(i), but he also contends that "the excluded assault related to M.S.'s motive or bias, specifically that the trauma of the assault triggered or at least contributed to the formation of false memories, which constitute[d] nearly the entirety of the evidence against" him.

Munoz does not expressly argue, as he did in the trial court, that the probative value of this evidence outweighs the danger of unfair prejudice, and the record supports the trial court's finding that it did not. The facts of the sexual assault M.S. experienced as a teenager are completely different from what she testified that Munoz had done to her over a period of several years when she was a child. We have held that, to show the relevancy of a victim's prior sexual conduct as an alternate source of sexual knowledge, "the defendant must establish that the prior acts clearly occurred and that the acts so closely resembled those of the present case that they could explain the victim's knowledge about the sexual matters in question." *Hale v. State*, 140 S.W.3d

8

381, 396 (Tex. App.—Fort Worth 2004, pet. ref'd).

Munoz likens his case to *Johnson v. State*, 490 S.W.3d 895 (Tex. Crim. App. 2016), but the facts of *Johnson* are not at all like the facts of Munoz's case. In *Johnson*, an aggravated-sexual-assault-of-a-child case, the defendant claimed that the trial court had abused its discretion and violated his right of confrontation by excluding a proffered cross-examination about the complainant's past sexual behavior because it was relevant to his defense of fabrication that the complainant had outcried to garner sympathy and to deflect negative attention away from himself. *Id.* at 908. The complainant had sexually molested his younger sister for years and, as a result, his parents had placed him into counseling at around the same time that he had made his sexual-abuse outcry about the defendant. *Id.*

During cross-examination before the jury, the *Johnson* complainant admitted that when he did not get a promised gaming system from the defendant, he knew he "could make an accusation of sexual abuse and get somebody in trouble." *Id.* at 902. Outside the jury's presence, he testified that he had been sexually abusing his sister for several years and that when he was put into counseling before his outcry, his parents had not known about the defendant's sexual abuse of him but had known about his sexual abuse of his sister. *Id.* at 903–04. The defendant offered the evidence as relevant to the complainant's emotional state at the time of his outcry and his motive for accusing the defendant as not only to deceive but also to get attention, and he made the proffer under the Sixth Amendment to the United States Constitution and

9

Texas Rules of Evidence 404(b) and 412 regarding credibility and motive to fabricate. *Id.* at 904.

The Court of Criminal Appeals held that the evidence should have been admitted because "[i]n a case such as this, where the believability of the complainant forms the foundation of the State's case, Texas law favors the admissibility of evidence that is relevant to the complainant's bias, motive, or interest to testify in a particular fashion." *Id.* at 910. The record did not show that the trial court had excluded the complainant's past-sexual-behavior evidence because it had concerns about harassment, prejudice, confusion of the issues, witness safety, or repetitive interrogation, and nothing in the record would have supported such a finding. *Id.* at 911. And the evidence that the complainant had been sexually molesting his sister and that his parents had placed him in counseling because of it was "clearly relevant to the issue of whether [he] had a motive to falsely accuse [the defendant] of sexual assault." *Id.* The court concluded that the evidence was admissible under Rule 412 because it related to the complainant's motive to fabricate the accusation and that it was constitutionally required to be admitted under the Confrontation Clause. *Id.* at 913.

Here, Munoz concedes that M.S. did not falsely accuse the three men who were convicted of sexually assaulting her when she was a teenager, but he argues that he offered this evidence

> to support a legitimate and strategic theory: that the complainant's historical trauma could have influenced or motivated a misattribution of events, or that family dynamics and prior trauma affected the narrative

10

of the accusations. . . . As in *Johnson*, the excluded evidence in [this case] went directly to the theory that the complainant's allegations were either fabricated or confused with other historical events.

But Munoz does not explain how being drugged and gang raped at age 16 could have or would have motivated M.S. to fabricate an allegation that he had sexually molested her over a period of years when she was a child or how M.S. could possibly have confused these two sexual experiences, which occurred under vastly different circumstances and were so remote in time to one another. *Cf. Matz v. State*, 989 S.W.2d 419, 423 (Tex. App.—Fort Worth 1999) (holding that defendant failed to establish that prior extraneous sexual acts were "sufficiently similar to be relevant" where child complainant's detailed accounts of sexual acts she was forced to participate in at defendant's home bore "little or no resemblance to her vague account of [another child]'s abuse" of her), *rev'd on other grounds*, 14 S.W.3d 746 (Tex. Crim. App. 2000).

Munoz further compares his case to *Johnson* by stating, "In both, the defense was not seeking to admit irrelevant or gratuitously prejudicial details of the complainant's past[] but rather to offer specific, targeted evidence to explain why the complainant might accuse the defendant falsely." But Munoz failed to demonstrate that a definitive and logical link existed between the excluded sexual-assault evidence and M.S.'s alleged motive or bias to testify falsely. *Cf. McDonald v. State*, No. 02-13-00483-CR, 2015 WL 2353307, at *5 (Tex. App.—Fort Worth May 14, 2015, no pet.) (mem. op., not designated for publication) (rejecting a similar appellate

11

argument where the appellant "did not establish a link between the complainant's alleged possession of sex toys and videos, and alleged sexual relationships with boys her own age, and a motive or bias to lie about [the appellant]'s alleged sexual assaults of her"); *Ladesic v. State*, No. 2-05-444-CR, 2007 WL 2963755, at *4–5 (Tex. App.—Fort Worth Oct. 11, 2007, no pet.) (mem. op., not designated for publication) (holding that defendant "did not demonstrate a definite and logical link" between complainant's past sexual conduct with other males and her alleged motive or bias).

On this record, we hold that the trial court did not abuse its discretion by sustaining the State's objection and excluding M.S.'s testimony about being sexually assaulted when she was 16. *See Alvarez v. State*, No. 02-23-00108-CR, 2024 WL 2066361, at *9 (Tex. App.—Fort Worth May 9, 2024, pet. ref'd) (mem. op., not designated for publication) ("Because Alvarez failed to carry his burden [to show how the probative value of the excluded evidence outweighed the danger of unfair prejudice], we hold that the trial court did not abuse its discretion by excluding evidence of the sexual abuse committed against the victim by [others]."); *Fuentes v. State*, No. 02-15-00356-CR, 2016 WL 6277369, at *6 (Tex. App.—Fort Worth Oct. 27, 2016, pet. ref'd) (mem. op., not designated for publication) (concluding that a trial court did not abuse its discretion by excluding specific, nonmaterial evidence of the victim's past sexual behavior because the appellant had failed "to carry his burden to prove (or even address) that the probative value of the excluded evidence outweighed any unfair prejudice to [the victim] that would have been caused by its admission").

12

We overrule Munoz's first issue.

## II.     Excluded Evidence of C.S.'s Criminal History

In his second issue, Munoz argues that the trial court erred in not allowing testimony regarding the criminal history of M.S.'s father. He characterizes the excluded evidence of C.S.'s conviction for sexual assault of a child under 14 as "evidence of the complainant's possible prior sexual abuse by her father," but he failed to adduce any such evidence at trial. Rather, M.S.'s excluded testimony on this matter was that C.S. had *not* sexually abused her:

Q. All right. And do you know what your father is in prison for?

A. Yes.

Q. And what is that?

A. He molested a five-year-old girl.

Q. All right. And you don't think that the facts of that case are similar to what you're describing?

A. No, I have no -- I've had no relationship with him. He was never anything to me.

Q. You don't think that there's anything about hearing him do the same thing to another girl that has mingled with any memories in any way that could be false?

A. No, because I didn't have a relationship with my dad. He was just a person that impregnated my mom. That's what I get from him. I don't have a relationship with him.

Q. So if the adults in your life were to come behind you and testify that, yes, when [M.S.'s mother] first moved back into that grandparents' house, her husband, [C.S.], moved in with her, would they be lying or would you be misremembering because you were so little?

13

A. He didn't live with us. I'm 100 percent sure he didn't live with us. He went to -- he beat my mom up. He had a cocaine problem, and he went to prison. My mom and my sisters and I, we went -- we were in that house.

Q. All right. And there's no chance that your memories could be something that your father did instead of your uncle?

A. No, my dad did not do it.

Q. But you don't have any way to know that. You were three.

A. I'm 100 percent sure. I'm 100 percent sure it was him. 100 percent sure. No doubt in my mind.

. . . .

Q. (BY [DEFENSE COUNSEL]) [M.S.], can you understand that the audience might think that these things sound a little conveniently the same?

A. I'm sorry. What do you mean by that? What sounds the same?

Q. That exactly what your father did sounds like what you're claiming happened to you.

A. I mean, that -- my dad didn't do it. I mean, it's convenient that it's the same. It's a coincidence. But my dad did not do it.

Q. Okay. Maybe nobody did.

. . . .

A. I mean, you can ask me whatever, but I have a very vivid memory, very vivid memory when I was a kid. I remember distinctly. I'm 100 percent sure.

Q. Do you realize your father didn't go to prison until 1997?

A. I knew it was in the '90s. I just didn't know what exact year. I knew it was like mid '90 -- middish '90s. I just didn't know the exact year. I --

Q. Here's my point, if you're wrong about the dates, which if you --

THE COURT: All right. This is not cross-examination. This is a Rule 412 hearing.

[DEFENSE COUNSEL]: Yes, ma'am.

We do not see an abuse of discretion in the trial court's determining that this testimony by M.S. was not relevant. We further note that Munoz later stated in his offer of proof that "[b]ut for the rulings of the [trial court], the evidence would have shown . . . that [C.S.] is the biological father of" M.S. and that M.M.'s testimony "would have included the fact that he was in the house for a brief period of time[ and] had access to the child." But none of the trial court's rulings prevented Munoz from introducing these facts into evidence before the jury; he was able to identify C.S. as M.S.'s father and also elicit testimony from M.M. that C.S. had briefly lived at the house where the alleged abuse took place. The evidence that C.S. had been convicted of sexually assaulting a five-year-old girl several years later in another county, hundreds of miles away, did not have any tendency to make the identity of M.S.'s abuser "more or less probable than [they] would be without the evidence." *See* Tex. R. Evid. 401 (defining relevant evidence).

Even assuming that this excluded evidence was relevant, its probative value was substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, and undue delay. *See* Tex. R. Evid. 403 (allowing a court to "exclude relevant evidence if its probative value is substantially outweighed by a

15

danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence").[5] The Court of Criminal Appeals has cautioned that "[i]n weighing probative value against Rule 403 counterfactors, courts must be sensitive to the special problems presented by 'alternative perpetrator' evidence." *Wiley v. State*, 74 S.W.3d 399, 406–08 (Tex. Crim. App. 2002). Although a defendant obviously has a right to attempt to establish his innocence by showing that someone else committed the crime, he still must show that his proffered evidence regarding the alleged alternative perpetrator is sufficient, on its own or in combination with other evidence in the record, to show a nexus between the crime charged and the alleged "alternative perpetrator." *Id.* (cleaned up).

Here, it was within the trial court's discretion to exclude the proffered evidence of C.S.'s 1999 conviction for sexual assault of a child under 14 under Texas Rule of Evidence 403. We have reviewed this issue in similar cases. In *Ruiz v. State*, an aggravated-sexual-assault-of-a-child case, the defendant had wanted to call his wife to testify to her belief that a family friend, not the defendant, had abused the complainant and that the complainant had misidentified the defendant as her abuser.

---

[5]Although the State did not object to the evidence on this basis, we can affirm a trial court's decision on a legal theory not presented to the trial court. *Vennus v. State*, 282 S.W.3d 70, 74 (Tex. Crim. App. 2009); *Hailey v. State*, 87 S.W.3d 118, 121–22 (Tex. Crim. App. 2002). If the trial court's ruling is correct under any applicable legal theory, then we will not disturb it even if the court gave a wrong or insufficient reason for the ruling. *Ette v. State*, 551 S.W.3d 783, 786 (Tex. App.—Fort Worth 2017), *aff'd*, 559 S.W.3d 511 (Tex. Crim. App. 2018).

No. 02-19-00016-CR, 2020 WL 1173712, at *1 (Tex. App.—Fort Worth Mar. 12, 2020, pet. ref'd) (mem. op., not designated for publication). The probative value of that evidence was even greater than the probative value of the evidence at issue here; unlike Munoz's proffered evidence about C.S.'s sexual assault conviction, the wife's testimony in *Ruiz* would have established that the complainant "was in an environment in which a known child molester had access to her," prior to her outcry. *Id.* at *2. But we still said that, "without something more, [the wife's] inferences amounted to a 'nebulous allegation that perhaps [the family friend] was somehow involved.'" *Id.* at *3 (quoting *Wiley*, 74 S.W.3d at 407). Our reasoning from *Ruiz* is so applicable to Munoz's case that we may use it here with minimal edits:

> Why [Munoz] wanted the evidence is straightforward: to create reasonable doubt about the perpetrator's identity and to [support his defensive theory of memory transference]. But [Munoz]'s need had to be weighed against other factors:
>
> • Because the rational evidentiary inferences were so suspect, the evidence tempted jurors to fill in the gaps with their emotions and prejudices. *See* [*Gonzalez v. State*, 544 S.W.3d 363, 372 (Tex. Crim. App. 2018)]; *Wiley*, 74 S.W.3d at 407.
>
> • And given that the allegation lacked other evidentiary support, any weight that the jury gave it would likely be undue—that is, weight not attributable to its own strength. *See Gonzalez*, 544 S.W.3d at 372.
>
> • Further, the testimony would not have necessarily exculpated [Munoz]— assuming that [C.S.] had abused [M.S.], that did not mean that [Munoz] had not.
>
> • Misidentification meshed poorly with the other facts: [Munoz] was [M.S.]'s [uncle], and [C.S.] was [her father], so neither [Munoz] nor [C.S.] was a stranger to [M.S.]. The case turned on whether [M.S.] had lied about

17

[Munoz], not on whether [M.S.] had inexplicably confused [Munoz] for [C.S.]. Thus, the testimony could confuse or distract the jurors from the main issue—whether [Munoz] had molested [M.S.]. *See id.*

• Although [the excluded] testimony, by itself, might not have prolonged the trial unnecessarily, [it] would have invited rebuttal evidence. Expanding the trial's factual parameters based on circumstantial guesswork that would likely be rebutted with other circumstantial suppositions—regarding a possible offense that not even the complainant had alleged—would unnecessarily prolong the trial. *See id.*

2020 WL 1173712, at *3. In *Feagins v. State*, we applied *Wiley* and *Ruiz* to a continuous-sexual-abuse-of-a-young-child case in which the appellant had stated at trial that he wanted to discuss the complainant's stepgrandfather's prior criminal conviction for aggravated sexual assault of a child. No. 02-24-00158-CR, 2025 WL 1717287, at *4–5, *7–8 (Tex. App.—Fort Worth June 19, 2025, no pet.) (mem. op., not designated for publication). Similar to Munoz, the appellant in *Feagins* had argued at trial that the stepgrandfather had "had access to the complainant . . . and that he could therefore possibly have been the perpetrator." *Id.* at *4. But because "the record demonstrate[d] that the complainant identified [the a]ppellant as the only person who had ever sexually assaulted her," we said that "the alternative-perpetrator defense [wa]s not applicable." *Id.* at *9. By the same reasoning, because M.S. had consistently identified Munoz—and only Munoz—as the man who had sexually molested her for several years when she was a child, Munoz's theory of admissibility regarding C.S.'s prior sexual-assault-of-a-child conviction fails.[6]

---

[6]We went on to say in *Feagins* that, even assuming that the alternative-

18

We hold that Munoz has not shown that the trial court abused its discretion by excluding evidence that M.S.'s father had been convicted of sexual assault of a child under 14. *See Feagins*, 2025 WL 1717287, at *7 n.10 (holding that the appellant had "failed to demonstrate the requisite nexus between the charged crime and [the stepg]randfather as the alternative perpetrator where the complainant unequivocally and consistently identified solely [the a]ppellant as the perpetrator"); *Ruiz*, 2020 WL 1173712, at *2–3; *Ingerson v. State*, No. 02-11-00311-CR, 2018 WL 6844126, at *3 (Tex. App.—Fort Worth Dec. 31, 2018, no pet.) (mem. op. on remand, not designated for publication) ("Because Ingerson did not show a nexus between his proffered evidence of an alternative perpetrator and the crime charged and because the proffered evidence's prejudicial value substantially outweighed its probative value, we hold that the trial court did not abuse its discretion by excluding Ingerson's proffered alternative-perpetrator evidence."). Accordingly, we overrule Munoz's second issue.

---

perpetrator defense did apply, the trial court "did not prohibit [the a]ppellant from advancing an alternative-perpetrator defense; it solely prohibited him from using [the stepgrandfather's] criminal history to support that defense." 2025 WL 1717287, at *9. The same is true here; the trial court did not prohibit Munoz from presenting an "alternative perpetrator" defense to the jury; it prohibited him from using C.S.'s criminal history to support that defense. Like the appellant in *Feagins*, Munoz has "thus failed to demonstrate that the trial court abused its discretion by excluding [his alleged alternative perpetrator]'s remote conviction as part of [Munoz]'s alternative-perpetrator evidence." *See id.*

## III. Hearsay Objection (Not Preserved)

In his third issue, Munoz complains that the trial court "erred by allowing the complainant to testify about what she told her mother, grandmother, and aunt regarding the alleged abuse." He argues that these statements "were classic hearsay as defined by [Texas Rule of Evidence] 801(d) and were admitted to prove . . . that the abuse occurred . . . and thus subject to exclusion under [Rule] 802 unless an exception applied." "Hearsay" means a statement that (1) the declarant does not make while testifying at the current trial or hearing and (2) a party offers in evidence to prove the truth of the matter asserted in the statement. Tex. R. Evid. 801(d). Hearsay is not admissible unless a statute, the Rules of Evidence, or other rules prescribed under statutory authority provide otherwise. Tex. R. Evid. 802.

In the only record citation Munoz includes in his argument on this issue, we see that he made but one objection. We quote that objection in all its appropriate context:

> Q. When was the first time you told anybody about what was happening?
>
> A. I was five years old, and I told my mom, and then we told my grandma, which is her mom.
>
> Q. Okay. And did you feel like you were being protected in that moment?
>
> A. I did in the moment because my grandma got a doll out, and she asked me where he was --
>
> [DEFENSE COUNSEL]: Objection; hearsay.

20

THE COURT: Overruled.

Q. (BY [THE STATE]) You can keep going.

A. I -- I did. My grandma got -- I did feel protected because my grandma got a doll out, and she asked me where he was touching me, and I told her. So I thought that -- I thought something was going to happen, and I thought -- I thought all of it would stop.

Munoz did not repeat his "hearsay" objection or ask for a running objection to M.S.'s testimony.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion sufficiently stating the specific grounds, if not apparent from the context, for the desired ruling. Tex. R. App. P. 33.1(a)(1); *Montelongo v. State*, 623 S.W.3d 819, 822 (Tex. Crim. App. 2021). Most complaints, "whether constitutional, statutory, or otherwise, are forfeited by failure to comply with Rule 33.1(a)." *Mendez v. State*, 138 S.W.3d 334, 342 (Tex. Crim. App. 2004). "With exceptions that do not apply here, to preserve error, a party must continue to object each time the objectionable evidence is offered." *Clay v. State*, 361 S.W.3d 762, 766 (Tex. App.—Fort Worth 2012, no pet.); *see Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003) (explaining the general rule and exceptions); *see also Geuder v. State*, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003) (quoting *Martinez* and explaining same). And "overruling an objection to evidence will not result in reversal [on appeal] when other such evidence was received without objection, either before or after the complained-of ruling." *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998).

By the time Munoz made his hearsay objection, M.S. had already testified to the details of the sexual acts that she claimed he had done to her. She did not testify that she had told her mother, grandmother, or aunt anything different. Any "statement" that she made to them about the abuse would have thus been duplicative of what had already been admitted into evidence without objection, and Munoz did not repeat his hearsay objection when M.S. proceeded to testify that she had told others, including her friends and her counselor as an adult, about the alleged abuse.

We therefore hold that Munoz's singular hearsay objection preserved nothing for our review,[7] and we overrule his third issue. *See* Tex. R. App. P. 33.1(a)(1); Tex. R. Evid. 103(a)(1).

## IV.   Unpronounced Fine

Finally, although Munoz does not complain about it on appeal, we note a clerical error in one of the trial court's judgments. In open court, consistent with the jury's verdict as to punishment, the trial court sentenced Munoz "to 20 years confinement in the Institutional Division of the Texas Department of Criminal Justice . . . and . . . a fine of $5,000 in count[] two and in count[] four." One of the judgments of conviction accurately reflects that Munoz received a sentence of 20 years' confinement and a $5,000.00 fine, but the other judgment of conviction reflects a

---

[7]Although the State does not argue that Munoz has forfeited this issue, error preservation is a systemic requirement, and we have a duty to ensure that a claim is properly preserved in the trial court before we address its merits. *Dixon v. State*, 595 S.W.3d 216, 223 (Tex. Crim. App. 2020).

20-year prison sentence and total fines of $5,100.00. It appears from language elsewhere in that judgment that the additional $100 is a "Child Abuse Prevention Fine," which is authorized by statute. *See* Tex. Code Crim. Proc. Ann. art. 102.0186. However, a fine is part of a defendant's sentence and must be orally pronounced. *See Armstrong v. State*, 340 S.W.3d 759, 767 (Tex. Crim. App. 2011).

When a variation exists between the oral pronouncement of sentence and the written memorialization of the sentence, "the oral pronouncement controls." *Taylor v. State*, 131 S.W.3d 497, 502 (Tex. Crim. App. 2004). Here, the trial court did not orally pronounce the $100 "Child Abuse Prevention Fine," and the fine's inclusion in the judgment was therefore error. We have the authority to modify a judgment "to make the record speak the truth when the matter has been called to [our] attention by any source." *See French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992). Accordingly, we modify the judgment of conviction reflecting total fines of $5,100.00 to delete the $100 Child Abuse Prevention Fine[8] and reflect a total fine of $5,000.00.

## Conclusion

Having overruled Munoz's three issues, we affirm the trial court's modified

---

[8]Munoz's failure to complain on appeal about the fine does not vitiate our authority to modify the judgment. *See Portis v. State*, No. 02-19-00228-CR, 2019 WL 6905026, at *3 n.1 (Tex. App.—Fort Worth Dec. 19, 2019, no pet.) (mem. op., not designated for publication); *Cummings v. State*, No. 02-18-00042-CR, 2018 WL 4020013, at *2 & n.4 (Tex. App.—Fort Worth Aug. 23, 2018, no pet.) (mem. op., not designated for publication); *Demerson v. State*, No. 02-18-00003-CR, 2018 WL 3580893, at *2 (Tex. App.—Fort Worth July 26, 2018, no pet.) (mem. op., not designated for publication).

judgment of conviction as modified, *see* Tex. R. App. P. 43.2(b), and we affirm the

trial court's other judgment of conviction in all respects, *see* Tex. R. App. P. 43.2(a).


/s/ Mike Wallach
Mike Wallach
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  January 8, 2026